JAMES CLINTON,
　　　*Plaintiff,*

　　　v.

MARCO PEREZ, JOHN ALDI, DANIEL
PAPOOSHA, DOMENICK PISANO,
MERIDITH MINNOCCI, AND ANTONIO
SANTIAGO,
　　　*Defendants.*

No. 3:19-cv-02010 (VAB)

## RULING AND ORDER ON MOTION TO DISMISS

James Clinton ("Plaintiff") has sued employees of the Connecticut Department of

Correction: Marco Perez, John Aldi, Daniel Papoosha, Domenick Pisano, Meridith Minnocci,

and Antonio Santiago (collectively, "Defendants") for alleged violations of his constitutional

rights under both the United States Constitution and the Constitution of the State of Connecticut.

Compl., ECF No. 1 (Dec. 26, 2019); Am. Compl., ECF No. 7 (July 13, 2020).

Defendants have filed a motion a motion to dismiss the Amended Complaint in its

entirety. Defs.' Mot. to Dismiss, ECF No. 17 (Sept. 4, 2020) ("Defs.' Mot.").

For the reasons stated below, Defendants' motion to dismiss is **GRANTED**.

All claims are dismissed with prejudice.

## I.　FACTUAL AND PROCEDURAL BACKGROUND

### A.　Factual Allegations

On or around February 19, 2019, "[a]n interview was schedule[d] by the Department of

Correction Security Division . . . pertaining to [Mr. Clinton's] off[-]duty conduct." Am. Compl.

¶ 11. Mr. Clinton allegedly began recording the interview, *id.* ¶ 14, and allegedly Mr. Perez told

him that "only [the] security division was allowed" to make recordings, *id.* ¶ 15. Mr. Perez allegedly also told Mr. Clinton "[he] would receive a copy of the interview at a later time." *Id.* When Mr. Clinton did not stop recording, "[t]he Department of Correction[] [H]ead of Security Division, Antonio Santiago[,] was [allegedly] summon[ed] to the office" where the interview was taking place. *Id.* ¶ 16.

Mr. Clinton allegedly "stated that he would cease from such activities . . . if [they] . . . were unlawful, illegal or against administrative policies." *Id.* ¶ 17. Defendants allegedly "fail[ed] to prove or provide" Mr. Clinton with evidence that any such laws or policies existed. *Id.* ¶ 18. Mr. Clinton allegedly asked if the Constitution applied and Mr. Santiago allegedly told Mr. Perez that it did not. *Id.* ¶ 19. Mr. Clinton allegedly would not "cooperate . . . [and] was escorted out of the office to the lobby of the building." *Id.* ¶ 20.

He allegedly learned that he would be "placed on administrative leave [until] further notice." *Id.* ¶ 21. Consequently, Mr. Clinton allegedly had to participate in the interview and "give statements pertaining to the investigation." *Id.* ¶ 22.

## B. Procedural History[1]

On December 26, 2019, Mr. Clinton filed his initial Complaint against Defendants. Compl.

On July 13, 2020, Mr. Clinton filed an Amended Complaint. Am. Compl.

On September 4, 2020, Defendants filed a motion to dismiss Mr. Clinton's Amended Complaint. Defs.' Mot; Defs.' Mem. in Supp. of Their Mot. to Dismiss, ECF No. 17-1 (Sept. 4, 2020) ("Defs.' Mem.").

---

[1] The Court provides only the procedural history relevant to its decision on the pending motion to dismiss.

On September 18, 2020, Mr. Clinton filed a motion to strike Defendants' motion to dismiss. Pl. Mot. to Obj. & Strike Defs. Mot. to Dismiss, ECF No. 21 (Sept. 18, 2020).

On September 24, 2020, Defendants filed an opposition to Mr. Clinton's motion to strike the motion to dismiss, Defs.' Opp'n Mem. to Pl.'s Mot. to Strike Their Mot. to Dismiss, ECF No. 26 (Sept. 24, 2020), and a reply in support of their motion to dismiss, Defs.' Reply Mem. in Supp. of Their Mot. to Dismiss, ECF No. 27 (Sept. 24, 2020).

On June 19, 2021, this Court issued an Order denying Mr. Clinton's motion to strike Defendants' motion to dismiss. Ruling and Order on Mot. to St[r]ike, Mot. to Submit Evid., and Mot. for Default J., ECF No. 29 (June 19, 2021) ("June Order").

On July 7, 2021, the Court held a hearing regarding the pending motion to dismiss. Min. Entry, ECF No. 31 (July 7, 2021).

## II.     STANDARD OF REVIEW

### A.  Rule 12(b)(1)

 "A case is properly dismissed for lack of subject matter jurisdiction under [Federal] Rule [of Civil Procedure] 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000) (citing Fed. R. Civ. P. 12(b)(1)). The plaintiff bears the burden of establishing by a preponderance of the evidence that the court has subject matter jurisdiction over the claims. *See id.*

"When considering a motion to dismiss [under] Rule 12(b)(1), the court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff." *Sweet v. Sheahan*, 235 F.3d 80, 83 (2d Cir. 2000); *see also Nat. Res. Def. Council v. Johnson*, 461 F.3d 164, 171 (2d Cir. 2006) (quoting Sweet, 235 F.3d at 83). The court, however, may also resolve disputed jurisdictional issues "by referring to evidence outside of the pleadings, such as

affiliate, and if necessary, hold an evidentiary hearing." *Karlen ex rel. J.K. v. Westport Bd. of Educ.*, 638 F. Supp. 2d 293, 298 (D. Conn. 2009) (citing *Zappia Middle E. Constr. Co. v. Emirate of Abu Dhabi*, 215 F.3d 247, 253 (2d Cir. 2000)).

"When the Rule 12(b)(1) motion is facial, *i.e.*, based solely on the allegations of the complaint . . ., the plaintiff has no evidentiary burden." *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 56 (2d Cir. 2016). "[A] defendant is [also] permitted to make a fact-based Rule 12(b)(1) motion, proffering evidence beyond the [p]leading." *Id.* "In opposition to such a motion, the plaintiffs will need to come forward with evidence of their own to controvert that presented by the defendant 'if the affidavits submitted on a 12(b)(1) motion . . . reveal the existence of factual problems' in the assertion of jurisdiction." *Id.* (quoting *Exch. Nat'l Bank of Chi. v. Touche Ross & Co.*, 544 F.2d 1126, 1131 (2d Cir. 1976)).

### B. Rule 12(b)(6)

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). Any claim that fails "to state a claim upon which relief can be granted" will be dismissed. Fed. R. Civ. P. 12(b)(6). In reviewing a complaint under Rule 12(b)(6), a court applies a "plausibility standard" guided by "two working principles." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

First, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*; *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations . . . a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." (internal citations omitted)). Second, "only a

complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679. Thus, the complaint must contain "factual amplification . . . to render a claim plausible." *Arista Records LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (quoting *Turkmen v. Ashcroft*, 589 F.3d 542, 546 (2d Cir. 2009)).

When reviewing a complaint under Federal Rule of Civil Procedure 12(b)(6), the court takes all factual allegations in the complaint as true. *Iqbal*, 556 U.S. at 678. The court also views the allegations in the light most favorable to the plaintiff and draws all inferences in the plaintiff's favor. *Cohen v. S.A.C. Trading Corp.*, 711 F.3d 353, 359 (2d Cir. 2013); *see also York v. Ass'n of the Bar of the City of N.Y.*, 286 F.3d 122, 125 (2d Cir. 2002) ("On a motion to dismiss for failure to state a claim, we construe the complaint in the light most favorable to the plaintiff, accepting the complaint's allegations as true.").

A court considering a motion to dismiss under Rule 12(b)(6) generally limits its review "to the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007). A court may also consider "matters of which judicial notice may be taken" and "documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993); *Patrowicz v. Transamerica HomeFirst, Inc.*, 359 F. Supp. 2d 140, 144 (D. Conn. 2005).

Complaints filed by *pro se* plaintiffs, however, "must be construed liberally and interpreted to raise the strongest arguments that they suggest." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F. 3d 471, 474 (2d

Cir. 2006)) (internal quotation marks omitted); *see also Tracy v. Freshwater*, 623 F. 3d 90, 101-02 (2d Cir. 2010) (discussing the "special solicitude" courts afford *pro se* litigants).

## III. DISCUSSION

Mr. Clinton has sued Defendants alleging violations of his rights under 42 U.S.C. §§ 1983, 1985, and 1986; the First, Fifth, Sixth, Seventh, and Fourteenth Amendments to the United States Constitution; and Connecticut General Statutes Section 31- 51q. Am. Compl. ¶ 2.

The Court will address each of Mr. Clinton's claims in turn.[2]

### A. Official Capacity Claims

The Eleventh Amendment, which protects the state from suits for monetary relief, also protects state officials sued for damages in their official capacity. *See Kentucky v. Graham*, 473 U.S. 159, 169 (1985) (the Eleventh Amendment's bar "remains in effect when state officials are sued for damages in their official capacity"); *Quern v. Jordan*, 440 U.S. 332, 341 (1979) (Section 1983 does not override a state's Eleventh Amendment immunity). Mr. Clinton has sued Mr. Perez, Mr. Aldi, Mr. Papoosha, and Ms. Minnocci "only in [their] official capacit[ies]." Am. Compl. ¶¶ 4-6, 8-9. Mr. Clinton further has sued Mr. Pisano "only in his official capacity." *Id.* ¶ 7. Given the Eleventh Amendment's prohibition against damage claims against state officials in their official capacities, all claims brought against all of the defendants in their official capacities must be dismissed.

Accordingly, the Court grants Defendants' motion to dismiss all claims against all defendants in their official capacities.

---

[2] Having already denied Mr. Clinton's response to the Defendants' motion to dismiss, a motion to strike, the Court shall consider only the Amended Complaint, Defendants' motion to dismiss, and its supporting documents when addressing this motion.

## B. The 42 U.S.C. §§ 1985 and 1986 Claims

To allege a claim under § 1985(3), a plaintiff must plead "(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of equal protection of the law, or of equal privileges and immunities under the law; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right of privilege of a citizen of the United States." *Rini v. Zwirn*, 886 F. Supp. 270, 290 (E.D.N.Y. 1995) (citing *United Bhd. of Carpenters & Joiners, Local 610 v. Scott*, 463 U.S. 825, 828-29 (1983)).

42 U.S.C. § 1986 provides that "every person" with the knowledge of the "wrongs conspired to be done" and "having power to prevent or aid in preventing the commission of" wrongs proscribed by § 1985 and neglects or refuses to do so, "shall be liable to the party injured . . . for all damages caused by such wrongful act. . . ." 42 U.S.C. § 1986. Relief under § 1986 flows from a viable claim under § 1985. *Brown v. City of Oneonta, N.Y.*, 221 F.3d 329, 341 (2d Cir. 2001) (affirming dismissal of plaintiff's § 1986 claim because such a claim "must be predicated on a valid § 1985 claim" (quoting *Mian v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 7 F.3d 1085, 1087 (2d Cir. 1993)); *Mian*, 7 F. 3d at 1088 ("A valid § 1986 claim must be predicated upon a valid § 1985 claim.").

Mr. Clinton argues that Defendants violated his rights under 42 U.S.C. §§ 1985 and 1986. Am. Compl. ¶ 2. According to Mr. Clinton, Mr. Papoosha, Mr. Aldi, Ms. Minnocci, Mr. Santiago and Mr. Perez "fail[ed] to act or intervene" during the alleged incident and their inaction "constitute[s] negligence, resulting in bre[a]ch in fulfillment of [their] obligations . . . in violation of . . . 42 [U.S.C. §§] 1985 and 1986." *Id.* ¶¶ 24, 26-29.

Defendants argue that Mr. Clinton "fails to state a Section 1985(3) claim" because the Amended Complaint does not demonstrate "the existence of an agreement or meeting of the minds to violate constitutional rights, as necessary to demonstrate the claimed conspiracy." Defs.' Mem. at 7. Defendants also argue that Mr. Clinton's § 1985(3) claims must be dismissed because he has failed to "allege any facts plausibly suggesting that defendants were animated by class-based, invidiously discriminatory animus toward him." *Id.* (internal quotation marks omitted). Defendants argue that "liability under Section 1986 is predicated on a colorable claim under Section 1985 . . . [and] [b]ecause [Mr. Clinton] has failed to plead a cause of action under the latter provision, he has failed to plead a cause of action under the former." *Id.*

The Court agrees.

Section 1985 deals with conspiracies. *Harnage v. Dzurenda*, No. 3:14-CV-885 (SRU), 2014 WL 3360342, *2 (D. Conn. July 9, 2014). To maintain a § 1985 action, "a plaintiff 'must provide some factual basis supporting a meeting of the minds, such that defendants entered into an agreement, express or tacit, to achieve the unlawful end.'" *Webb v. Goord*, 340 F.3d 105, 110 (2d Cir. 2013) (quoting *Romer v. Morgenthau*, 119 F. Supp. 2d 346, 363 (S.D.N.Y. 2000)). Subsection (1) of § 1985 prohibits conspiracies to prevent federal officials from performing their duties. *Harnage*, 2014 WL 3360342, at *2. Subsection (2) of this statute prohibits conspiracies intended to deter witnesses from participating in state or federal judicial proceedings. *Id.* Finally, subsection (3) prohibits conspiracies to deprive persons of equal protection of the laws. *Id.*

In order to state a claim under § 1985(3), Mr. Clinton must allege:

> (1) the defendants were part of a conspiracy; (2) the purpose of the conspiracy was to deprive a person or class of persons of the equal protection of the laws; (3) an overt act taken in furtherance of the conspiracy; and (4) an injury to his person or property, or a

deprivation of a right or privilege. Importantly, [Mr. Clinton] must show that the conspiracy was motivated by a racial or otherwise class-based invidious discriminatory animus.

*Id.*

Under § 1986,

[e]very person who, having knowledge that any of the wrongs conspired to be done, and mentioned in section 1985 of this title, are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses so to do, if such wrongful act be committed, shall be liable to the party injured . . . .

42 U.S.C. § 1986. "Section 1986 provides no substantive rights; it provides a remedy for the violation of section 1985 . . . Thus, a prerequisite for an actionable claim under section 1986, is a viable claim under section 1985." *Harnage*, 2014 WL 3360342, at \*2.

Here, Mr. Clinton's only conceivable § 1985 claim is under subsection (3), but he has not alleged any facts showing that Defendants engaged in some conspiracy to deprive him of equal protection of the laws based on his race or other class-based discriminatory animus. *See Carter v. Inc. Vill. of Ocean Beach*, 759 F.3d 159, 164 (2d Cir. 2014) ("Moreover, '[42 U.S.C.] §§ 1985 and 1986 require some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action.'") (alteration in original) (quoting *Reynolds v. Barrett*, 685 F.3d 193, 201-02 (2d Cir. 2012)); *Sosa v. Lantz*, No. No. 3:09-CV-869 (JBA), 2010 WL 122649, at \*1 (D. Conn. Jan. 5, 2010) (finding no arguable basis in law for plaintiff's Section 1985 or 1986 claims without facts suggesting that defendant's actions were taken because of plaintiff's race or other unlawful discriminatory animus).

Mr. Clinton does not provide any facts suggesting that Defendants actions were due to "invidious[] discriminatory animus," *Carter*, 759 F.3d at 164, or any animus at all. And without a viable § 1985 claim, Mr. Clinton's claim under § 1986 also fails.

Accordingly, Defendants' motion to dismiss Mr. Clinton's claims under Sections 1985 and 1986 will be granted.

### C. The First Amendment Claim

The First Amendment provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances." U.S. Const. amend. I.

Mr. Clinton argues that "under the laws of the Unites States Constitution[] and the State of Connecticut Constitution" he had the right to "record the interview . . . utilizing a mobile phone device, evidencing an uncensored conversation prior to the interview taking place." Am. Compl. ¶ 14. According to Mr. Clinton "he was well within his right[s] to record . . . and [] no activity conducted by [him] was unlawful" *Id.* ¶ 18 (first alteration in original). He argues that Mr. Santiago made a "bias[ed] decision to move forward and seek that [Mr. Clinton] [] be placed on administrative leave as a form [of] discipline" "[i]n retaliation." *Id.* ¶ 28.

Defendants argue that "[w]hen acting as an employer, the State has interests in regulating the speech of its employees that differ significantly from those it possesses in connection with regulation of the speech of the citizenry in general." Defs.' Mem. at 10 (internal quotation marks and alteration omitted) (quoting *Pickering v. Bd. of Ed. of Twp. High Sch. Dist. 205, Will Cty., Ill.*, 391 U.S. 563, 568 (1968)). Defendants argue that while "accepting public employment" does not eviscerate an employee's First Amendment rights, "there must be a balance between the interests of the employee, as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." *Id.* at 11.

Defendants argue that Mr. Clinton "making an independent recording on his mobile device is not a public concern." *Id.* They also argue that Mr. Clinton's "expression was not as a citizen, but as a public employee," *id.* at 13, and the Court's "deference to the government's assessment of potential harms to its operations is appropriate when the employer has conducted an objectively reasonable inquiry into the facts," *id.* at 14. Defendants argue that Mr. Clinton has failed to meet the burden of showing a violation of his First Amendment rights. *Id.* at 9-15.

The Court agrees.

First of all, Mr. Clinton has failed to identify any viable caselaw providing an unfettered First Amendment right to record conversations. *See, e.g.*, *Clark v. Cmty. for Creative Non-Violence*, 468 U.S. 288, 293 (1984) ("Expression, whether oral or written or symbolized by conduct, is subject to reasonable time, place, or manner restrictions. We have often noted that restrictions of this kind are valid provided that they are justified without reference to the content of the regulated speech, that they are narrowly tailored to serve a significant governmental interest, and that they leave open ample alternative channels for communication of the information.").

And even if there were such a right, in the absence of applicable Supreme Court or Second Circuit caselaw clearly establishing such a right, the Defendants would be entitled to qualified immunity against this claim. *See Pearson v. Callahan*, 555 U.S. 223, 231 (2009) ("The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)); s*ee also Huth v. Haslun*, 598 F.3d 70, 73 (2d Cir. 2010) ("To overcome the defense

of qualified immunity, a plaintiff must show both (1) the violation of a constitutional right and (2) that the constitutional right was clearly established at the time of the alleged violation.").

Second, to the extent some other First Amendment claim of Mr. Clinton arguably exists, "[t]he Supreme Court has long recognized that the First Amendment affords a degree of protection to public employees to exercise the right of free speech without risk of retaliation by the State employer if the employee's speech in question is on matters of public interest." *Lynch v. Ackley,* 811 F.3d 569, 577 (2d Cir. 2016) (internal quotation marks omitted) (citing *Pickering*, 391 U.S. at 568). "At the same time, however, the State has interests as an employer in regulating the speech of its employees that differ significantly from those it possesses in connection with regulation of the speech of the citizenry in general." *Id.* (internal quotation marks omitted); *see Waters v. Churchill*, 511 U.S. 661, 675 (1994) ("The government's interest in achieving its goals as effectively and efficiently as possible is elevated from a relatively subordinate interest when it acts as sovereign to a significant one when it acts as employer. The government cannot restrict the speech of the public at large just in the name of efficiency. But where the government is employing someone for the very purpose of effectively achieving its goals, such restrictions may well be appropriate.").

"A plaintiff asserting a First Amendment retaliation claim must establish that: '(1) his speech or conduct was protected by the First Amendment; (2) the defendant took an adverse action against him; and (3) there was a causal connection between this adverse action and the protected speech.'" *Matthews v. City of N.Y.*, 779 F.3d 167, 172 (2d Cir. 2015) (quoting *Cox v. Warwick Valley Cent. Sch. Dist.,* 654 F.3d 267, 272 (2d Cir. 2011)).

> [T]wo inquiries . . . guide interpretation of the constitutional protections accorded to public employee speech. The first requires determining whether the employee spoke as a citizen on a matter of public concern. If the answer is no, the employee has no First

> Amendment cause of action based on his or her employer's reaction to the speech. If the answer is yes, then the possibility of a First Amendment claim arises. The question becomes whether the relevant government entity had an adequate justification for treating the employee differently from any other member of the general public.

*Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006) (citations omitted). Mr. Clinton's recording of his interview regarding his off-duty behavior, however, is not a matter of public concern. *See Piscottano v. Murphy*, 511 F.3d 247, 273 (2d Cir. 2007) ("an employee's [restricted] speech need not comment on the workings or functioning of the employer's operation; it is sufficient that that speech be detrimental to that operation"); *Reuland v. Hynes*, 460 F.3d 409, 417 (2d Cir. 2006) ("[I]n determining whether an employee's speech addresses a matter of public concern, the court should focus on the motive of the speaker and attempt to determine whether the speech was calculated to redress personal grievances or whether it had a broader public purpose." (internal quotation marks omitted) (quoting *Lewis v. Cowen*, 165 F.3d 154, 163-64 (2d Cir. 1999)); *see also Weinstein v. Univ. of Conn.*, 753 F. App'x 66, 68 (2d Cir. 2018) (finding that the plaintiff's "speech was focused on the private matter of his employment, which is not a matter of public concern."); *Montero v. City of Yonkers, N.Y.*, 890 F.3d 386, 399 (2d Cir. 2018) ("Whether speech is on a matter of public concern is a question of law, and is to be answered by the court after examining the 'content, form, and context of a given statement, as revealed by the whole record. . . . [S]peech that principally focuses on "an issue that is 'personal in nature and generally related to [the speaker's] own situation." (internal citation and quotation marks omitted)). In any event, despite Mr. Clinton alleging that "he was go[ing to] be placed on administrative leave," Am. Compl. ¶ 21, ultimately, no disciplinary action has been alleged to have been taken against Mr. Clinton, *see* Defs.' Mem. at 14.

Accordingly, Defendants' motion to dismiss Mr. Clinton's First Amendment claims will be granted.

### D. The Fifth Amendment Claim

The Fifth Amendment provides that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself nor be deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V.

Defendants argue that Mr. Clinton

> fails to state any claim under the Fifth Amendment. Because [Mr. Clinton]'s lawsuit does not allege any deprivation of his rights by the federal government, [and] any due process claim he has against the Defendants is properly brought under the Due Process Clause of the Fourteenth Amendment, not under that of the Fifth Amendment.

Defs.' Mem. at 8. Defendants also argue that Mr. Clinton's Fifth Amendment Claim should be dismissed because "he was not compelled to expose himself to any criminal proceeding and was not accused of any crime." *Id.*

The Court agrees.

The Fifth Amendment applies to the federal government, not to the states. *See Dusenbery v. United States*, 534 U.S. 161, 167 (2002) (finding the Due Process Clause of the Fifth Amendment applies to the federal government and the Due Process Clause of the Fourteenth Amendment applies to the states); *Mitchell v. Home*, 377 F.Supp.2d 361, 372–73 (S.D.N.Y.2005) ("Any due process rights plaintiff enjoys as against state government officials . . . arise solely from the Fourteenth Amendment due process clause."). Mr. Clinton has not alleged that a federal official violated his Fifth Amendment rights, but instead has only sued employees of the State of Connecticut. *See* Am. Compl. ¶¶ 4-9. Consequently, the Fifth Amendment is not applicable to this case. In any event, there is no suggestion of exposure to criminal liability, only the possibility of termination from his job, a civil, not a criminal, issue.

*See Ohio v. Reiner*, 532 U.S. 17, 20 (2001) ("The Fifth Amendment provides that no person shall be compelled in any criminal case to be a witness against himself. [T]his privilege not only extends to answers that would in themselves support a conviction but likewise embraces those which would furnish a link in the chain of evidence needed to prosecute the claimant." (internal alterations, quotation marks, and citation omitted)); *see also Zweig v. Marvelwood Sch.*, 203 Conn. App. 818 (2021) ("[A]bsent a clear breach of public policy, the employer must be allowed to make personnel decisions without fear of incurring civil liability. To do otherwise would subject the employer who maintains compliance with express statutory obligations to unwarranted litigation for failure to comply with a heretofore unrecognized public policy mandate." (internal quotation marks, alteration, and citation omitted)); *Wilk v. Abbott Terrace Health Ctr., Inc.*, No. CV065001328S, 2007 WL 2482486, at \*5 (Conn. Super. Ct. Aug. 15, 2007 ("The employer is allowed, in ordinary circumstances, to make personnel decisions without fear of incurring civil liability.").

Accordingly, Defendants' motion to dismiss Mr. Clinton's claim arising under the Fifth Amendment will be granted.

### E. The Sixth Amendment Claim

The Sixth Amendment provides that:

> In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defence.

U.S. Const. amend. VI. On its face, the Sixth Amendment is only applicable to criminal prosecutions. U.S. Const. Amend. VI ("In all criminal prosecutions . . . .").

15

Mr. Clinton argues that his rights under the Sixth Amendment were violated because he was not allowed to record "[a]n interview . . . by the Department of Correction Security Division." Am. Compl. ¶ 11.

Defendants argue that "[b]ecause [Mr. Clinton] does not challenge any conduct regarding an underlying criminal trial, he has not stated a Sixth Amendment claim and the claim must be dismissed." Defs.' Mem. at 9

The Court agrees.

"The Sixth Amendment is only applicable to criminal prosecutions." *Gilliam v. Black*, No. 3:18-cv-1740 (SRU), 2019 WL 3716545, at *6 (D. Conn. Aug. 7, 2019). Mr. Clinton does not allege that the "interview" with Defendants was part of a criminal prosecution, thereby failing to state a claim under the Sixth Amendment.

Accordingly, Defendants' motion to dismiss Mr. Clinton's Sixth Amendment claim will be granted.

### F. The Seventh Amendment Claim

The Seventh Amendment provides that, "[i]n Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved." U.S. Const. amend. VII. The Seventh Amendment applies "to actions enforcing statutory rights, and requires a jury trial upon demand, if the statute created legal rights and remedies, enforceable in an action for damages in the ordinary courts of law." *Brown v. Sandimo Materials*, 250 F.3d 120, 126 (2d Cir. 2001) (quoting *Curtis v. Loether*, 415 U.S. 189, 194 (1974)).

Defendants argue that Mr. Clinton's Amended Complaint is "utterly devoid of any allegation that his right to a jury trial . . . has been violated and thus th[e] claim fails." Defs.' Mem. at 9.

The Court agrees.

There is no viable Seventh Amendment claim raised here. Mr. Clinton has not provided any caselaw for the proposition that a jury trial would have been appropriate instead of the interview by Defendants. Moreover, the interview did not preclude him from having a jury trial in this case, to the extent that his claim warranted consideration by a jury, rather than dismissal as a matter of law. *See Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 40-41 (1989) ("The Seventh Amendment provides: 'In Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved. . . .' We have consistently interpreted the phrase 'Suits at common law' to refer to "suits in which legal rights were to be ascertained and determined.").

Accordingly, Defendants' motion to dismiss Mr. Clinton's Seventh Amendment claim will be granted.

### G. The Fourteenth Amendment Claim

"The Fourteenth Amendment's Due Process Clause protects persons against deprivations of life, liberty, or property without due process of law, and 'those who seek to invoke its procedural protection must establish that one of these interests is at stake.'" *Victory v. Pataki*, 814 F.3d 47, 59 (2d Cir. 2016), as amended (Feb. 24, 2016) (quoting *Graziano v. Pataki*, 689 F.3d 110, 114 (2d Cir. 2012).

Mr. Clinton argues that he was "deni[ed] substantive due process rights afforded by the Constitution." Am. Compl. ¶ 1. According to Mr. Clinton, by not being permitted to record the interview with Defendants, his constitutional rights were violated. *Id.* ¶ 14.

Defendants argue that Mr. Clinton failed to allege sufficient facts to "adequately allege how the procedures employed by the Defendants denied him a constitutionally adequate process." Defs.' Mem. at 3.

The Court agrees.

In *Hudson v. Palmer*, the Supreme Court held that "an unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful post[-]deprivation remedy for the loss is available." 468 U.S. 517, 533 (1984). Even if Mr. Clinton had been deprived of property, he has not properly alleged being denied a meaningful remedy. Indeed, Mr. Clinton had a remedy, the grievance process under the collective bargaining agreement, *see* Defs.' Mem. at 27 (noting and providing as an exhibit the collective bargaining agreement), but he has not alleged having exhausted this remedy before filing this lawsuit. Given the availability of this remedy and Mr. Clinton's failure to allege having exhausted it, his Fourteenth Amendment due process claim must fail. *See Russo v. City of Hartford*, 158 F. Supp. 2d 214, 224-225 (D. Conn. 2001) (dismissing claim for failure to allege exhaustion of collective bargaining agreement procedures to address right allegedly violated); *cf. Vera v. Saks & Co.*, 335 F.3d 109, 118–19 (2d Cir. 2003) (" Because plaintiff failed to exhaust his remedies under the [collective bargaining agreement] to grieve and arbitrate his section 193 claim, the District Court properly granted defendant summary judgment."); *see also Iqbal*, 556 U.S. at 679 ("[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss.").

Accordingly, Defendants' motion to dismiss Mr. Clinton's Fourteenth Amendment claim will be granted.

### H. The 42 U.S.C. § 1983 Claim

> "Section 1983 permits an individual deprived of a federal right by a person acting under color of state law to seek compensation in federal court." *Wimmer v. Suffolk Cty. Police Dep't*, 176 F.3d 125, 136 (2d Cir. 1999); *see also Richardson v. McKnight*, 521 U.S. 399, 403 (1997). To prevail on a Section 1983 claim, a plaintiff must prove that the challenged conduct was attributable at least in part to a person acting under color of state law, and that the conduct deprived the plaintiff of a right, privilege or immunity secured by the Constitution or laws of the United States.

*Wimmer*, 176 F.3d at 136-37.

As a threshold inquiry for Section 1983 claims, a court should precisely identify the constitutional violation alleged. *See Baker v. McCollan*, 443 U.S. 137, 140 (1979) ("[B]efore the relationship between the defendant's state of mind and his liability under [Section] 1983 can be meaningfully explored, it is necessary to isolate the precise constitutional violation with which he is charged.").

For the above stated reasons, the Court has not identified any cognizable claims under the United States Constitution in Mr. Clinton's Amended Complaint.

Accordingly, Defendants' motion to dismiss Mr. Clinton's Section 1983 claim will be granted.

### I. The State Law Claim

According to 28 U.S.C. § 1367,

> [I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

28 U.S.C. § 1367(a). "[D]istrict courts may decline to exercise supplemental jurisdiction over a claim," however, if "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3).

Supplemental or pendant jurisdiction is a matter of discretion, not of right. *See United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1996). Where all federal claims have been dismissed before a trial, state claims generally should be dismissed without prejudice and left for resolution by the state courts. *See* 28 U.S.C. § 1367(c)(3); *Carnegie-Mellon Univ. v. Cohill,* 484 U.S. 343, 350 (1988) ("[W]hen the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice."); *Kolari v. N.Y.-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise supplemental jurisdiction over the remaining state-law claims." (quoting *Cohill*, 484 U.S. at 350 n.7)).

"Once a district court's discretion is triggered under § 1367(c)(3), it balances the traditional values of judicial economy, convenience, fairness, and comity." *Kolari*, 455 F.3d at 122 (2d Cir. 2006) (internal quotation marks omitted); *see also Catzin v. Thank You & Good Luck Corp.*, 899 F.3d 77, 83 (2d Cir. 2018) ("If one of the § 1367(c) categories applies, the district court may then undertake the discretionary inquiry of whether to exercise supplemental jurisdiction . . . . '[A] district court should not decline to exercise supplemental jurisdiction unless it also determines that doing so would not promote the values articulated in *Gibbs*: economy, convenience, fairness, and comity.'" (quoting *Jones v. Ford Motor Credit Co.*, 358 F.3d 205, 214 (2d Cir. 2004))).

"In weighing these factors, the district court is aided by the Supreme Court's additional guidance in *Cohill* that 'in the usual case in which all federal-law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state-law claims.'" *Kolari*, 455 F.3d at 122 (quoting *Cohill*, 484 U.S. at 350 n.7)

(alteration in original); *see also Catzin*, 899 F.3d at 83 ("Under this prong, in a great many cases, the evaluation will usually result in the dismissal of the state-law claims.").

But as the Second Circuit recently emphasized, "[t]he principle that the elimination of federal-law claims prior to trial generally points to declining to exercise supplemental jurisdiction 'in the usual case' clearly does not mean that the balance of the factors always points that way." *Catzin*, 899 F.3d at 86. Thus, "[w]hen § 1367(c)(3) applies, the district court must still meaningfully balance the supplemental jurisdiction factors" of judicial economy, convenience, fairness, and comity before declining to exercise supplemental jurisdiction. *Id.*

"Because the Court has dismissed this case's federal claim[s], the Court must conduct the discretionary inquiry required under 28 U.S.C. § 1367(c) to determine whether it is appropriate to maintain jurisdiction over the remaining state-law claims." *Kleftogiannis v. Inline Plastics Corp.*, No. 3:18-CV-1975 (VAB), 2020 WL 3036026, at *8 (D. Conn. June 5, 2020).

The balance of factors here weighs in favor of declining to exercise supplemental jurisdiction. Principles of comity suggest Connecticut courts are more suited to determine the viability Mr. Clinton's claims under Connecticut General Statute Section 31-51q, Am. Compl. ¶ 2, and state law torts, *id.* ¶ 28 (alleging intentional infliction of emotional distress). Mr. Clinton's "claims may be vindicated, if at all, in state court under traditional state law principles." *Giammatteo v. Newton*, 452 F. App'x 24, 30 (2d Cir. 2011) (citing *Baker*, 443 U.S. at 146).

Accordingly, the Court declines to exercise supplemental jurisdiction and will dismiss any state-law claims.

### J. LEAVE TO AMEND

Under Federal Rule of Civil Procedure 15(a),

> [a] party may amend its pleading once as a matter of course within: (A) 21 days after serving it, or (B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier.

Fed. R. Civ. P. 15(a)(1). "In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). The district court has broad discretion to decide a motion to amend. *See Local 802, Assoc. Musicians of Greater N.Y. v. Parker Meridien Hotel*, 145 F.3d 85, 89 (2d Cir. 1998).

Reasons for denying leave to amend include "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment[.]" *Foman v. Davis*, 371 U.S. 178, 182 (1962); *see also Lucente v. Int'l Bus. Machines Corp.*, 310 F.3d 243, 258 (2d Cir. 2002) (noting leave to amend may be denied when amendment is "unlikely to be productive," such as when an amendment is "futile" and "could not withstand a motion to dismiss [under] Fed. R. Civ. P. 12(b)(6)"). "[A] motion for leave to amend a complaint may be denied when amendment would be futile." *Tocker v. Phillip Morris Cos., Inc.*, 470 F.3d 481, 491 (2d Cir. 2006) (citing *Ellis v. Chao*, 336 F.3d 114, 127 (2d Cir. 2003)); *see also Kim v. Kimm*, 884 F.3d 98, 105–06 (2d Cir. 2018) ("Therefore, because the proposed amendments would have no impact on the basis for the district court's dismissal and would consequently be futile, the district court did not abuse its discretion in denying [plaintiff] leave to amend." (citing *Ellis*, 336 F.3d at 127)).

As discussed, the Court has not identified any cognizable claims under the United States Consitution in Mr. Clinton's Amended Complaint, and none of the deficiencies identified above can be cured by further pleading. *See Acito v. IMCERA Grp., Inc.*, 47 F.3d 47, 55 (2d Cir. 1995) ("One good reason to deny leave to amend is when such leave would be futile."). As for the dismissed state law claims, given their jurisdictional deficiency and the absence of federal court jurisdiction without any viable federal claims – a deficiency that cannot be addressed by an amended pleading, at least in federal court – granting leave to amend the Amended Complaint on that basis also would be futile.

Accordingly, Mr. Clinton's Complaint will be dismissed with prejudice.

## IV.    CONCLUSION

For the reasons stated above, Defendants' motion to dismiss is **GRANTED**.

All claims are dismissed with prejudice.

The Clerk of Court is respectfully directed to close this case.

**SO ORDERED** at Bridgeport, Connecticut, this 9th day of July, 2021.

/s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE